RECEIVED

SEP 2 4 2014

AT 8:30_____M
WILLIAM T. WALSH, CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA    :

                          :    Criminal No. 14- 558- SDW

        v.

                          :    18 U.S.C. § 371
                               26 U.S.C. §§ 7206(1) & 7203
MARC SORRENTINO and    :
MICHAEL SORRENTINO,
    a/k/a "The Situation"    :


I N D I C T M E N T

The Grand Jury in and for the District of New Jersey, sitting

at Newark, charges:

COUNT 1
(Conspiracy to Defraud the United States)

Introduction

1.    At all times relevant to Count 1 of this Indictment:

A.    Defendant MARC SORRENTINO was a resident of Monmouth

County, New Jersey, was self-employed and received income.

B.    Defendant MICHAEL SORRENTINO, a/k/a "The Situation,"

was a resident of Ocean County, New Jersey, and was a reality

television personality who gained fame on the television show "The

Jersey Shore," which first appeared on the MTV network in or about

December 2009.  Defendant MICHAEL SORRENTINO was self-employed and

received income.

The Business Entities

C.    MPS Entertainment, LLC ("MPS") was a limited liability company existing under the laws of the State of New Jersey that was formed in or about January 2010.  Defendants MARC SORRENTINO and MICHAEL SORRENTINO held ownership interests in MPS of 20 percent and 80 percent, respectively.  MPS was purportedly engaged in the business of exploiting defendant MICHAEL SORRENTINO's celebrity status through various means, including but not limited to personal and television appearances, product endorsements, and sales of various consumer products.

D.    Situation Nation, Inc. ("SitNat") was a limited liability company existing under the laws of the State of New Jersey that was formed in or about November 2010.  Defendant MICHAEL SORRENTINO held a 100 percent ownership interest in SitNat.

E.    Situation Productions, Inc., Situation Capital Investments, LLC, and GTL Management, Inc. ("Other Sorrentino Businesses") were additional business entities established by defendants MARC SORRENTINO and/or MICHAEL SORRENTINO.

F.    MPS was established as a partnership and SitNat was established as an S-Corporation under the Internal Revenue Code. Pursuant to Internal Revenue Service ("IRS") regulations, neither MPS nor SitNat themselves incurred tax liabilities for the net income they earned for a given tax year.  Instead, the tax liabilities for net income earned or loss incurred by MPS and SitNat flowed through

to the owners, defendants MARC SORRENTINO and MICHAEL SORRENTINO, and these tax liabilities were required to be reported on the owners' U.S. Individual Income Tax Returns, Form 1040. MPS was required to annually file a U.S. Partnership Tax Return, Form 1065, and SitNat was required to annually file a U.S. S-Corporation Tax Return, Form 1120S with the IRS. Among other things, these forms enabled the IRS to identify any income required to be reported on the personal income tax returns of the owners of MPS and SitNat.

G. A certified public accounting firm (the "Accounting Firm"), with offices in Staten Island, New York, was engaged in the business of preparing income tax returns for clients.

Sources of Income

H. MPS, SitNat, and defendants MARC SORRENTINO and MICHAEL SORRENTINO received income from a variety of sources, including personal and television appearances by defendant MICHAEL SORRENTINO, a partnership interest in a vodka company, ownership of an online clothing business, publication of an autobiography and a comic book featuring defendant MICHAEL SORRENTINO as a superhero, and endorsements of products such as vitamins, DVDs, clothing lines, jewelry, tuxedos, and sunglasses.

The Bank Accounts

I. Defendant MICHAEL SORRENTINO had personal bank accounts which were at all times under his control. At various times, some of these bank accounts were also under the control of

defendant MARC SORRENTINO.

J.   MPS had business bank accounts which were at all times under the control of defendants MARC SORRENTINO and/or MICHAEL SORRENTINO.

K.   SitNat had business bank accounts which were at all times under the control of defendants MARC SORRENTINO and/or MICHAEL SORRENTINO.

L.   The Other Sorrentino Businesses had bank accounts which were at all times under the control of defendants MARC SORRENTINO and/or MICHAEL SORRENTINO.

M.   Income from the operation of MPS and SitNat was deposited into the various bank accounts described above. Defendants MARC SORRENTINO and MICHAEL SORRENTINO continually commingled monies among the bank accounts and used the monies from the bank accounts to pay for personal items, such as high-end luxury vehicles and clothing.  Defendants MARC SORRENTINO and MICHAEL SORRENTINO also withdrew cash from the bank accounts.

4

## The Conspiracy

2.   From in or about January 2010 through in or about November 2013, in Monmouth and Ocean Counties, in the District of New Jersey and elsewhere, defendants

MARC SORRENTINO and
MICHAEL SORRENTINO,
a/k/a "The Situation,"

did knowingly and intentionally conspire and agree with each other and others to defraud the United States by impeding, impairing, obstructing, and defeating, through deceitful and dishonest means, the lawful functions of the IRS, a constituent agency of the United States Department of the Treasury, to ascertain, compute, assess, and collect federal income taxes.

## Object of the Conspiracy

3.   The object of the conspiracy was to impede, impair, obstruct, and defeat, through deceitful and dishonest means, the lawful functions of the IRS, a constituent agency of the United States Department of the Treasury, to ascertain, compute, assess, and collect federal income.

## Manner and Means of the Conspiracy

4.   It was part of the conspiracy that defendants MARC SORRENTINO and MICHAEL SORRENTINO earned approximately $8.9 million in gross income on which they failed to pay all federal income taxes due and owing.

5.   It was further part of the conspiracy that defendants MARC

5

SORRENTINO and MICHAEL SORRENTINO submitted and caused to be submitted to the IRS false and fraudulent Forms 1065 and 1120S related to their business entities by understating the gross receipts of the businesses and by claiming false and/or inflated business expenditures, as well as disallowed expenses.

6.   It was further part of the conspiracy that defendants MARC SORRENTINO and MICHAEL SORRENTINO submitted and caused to be submitted to the IRS false and fraudulent individual tax returns by failing to report all income they received.

7.   It was further part of the conspiracy that on at least one occasion, defendant MICHAEL SORRENTINO attempted to evade bank currency reporting requirements.

8.   Defendants MARC SORRENTINO and MICHAEL SORRENTINO entered into numerous contracts with booking agencies for the purpose of defendant MICHAEL SORRENTINO making personal appearances at various venues, including nightclubs, bars, and liquor stores, in exchange for a booking fee.  The booking fee typically ranged from $1,500 to $48,000 per appearance.  Generally, a substantial portion of the booking fee would be paid in cash directly to defendants MARC SORRENTINO and/or MICHAEL SORRENTINO by the venue on the date of the appearance.  Defendants MARC SORRENTINO and MICHAEL SORRENTINO deposited some of the aforementioned cash that they received into the bank accounts controlled by the defendants.

9.   It was further part of the conspiracy that defendants MARC

6

SORRENTINO and MICHAEL SORRENINO did not declare all of the aforementioned cash that they received (which amounted to approximately $184,000 in tax year 2010, $154,000 in tax year 2011, and $31,000 in tax year 2012) as income.

10.  It was further part of the conspiracy that prior to in or about November 2010, defendants MARC SORRENTINO and MICHAEL SORRENTINO had payments from production companies for services performed by defendant MICHAEL SORRENTINO paid to MPS, whereupon the production companies issued Forms 1099 to MPS.

11.  It was further part of the conspiracy that shortly after SitNat was formed in November 2010, defendants MARC SORRENTINO and MICHAEL SORRENTINO had payments from production companies paid to SitNat instead of MPS.  Because SitNat was established as an S-Corporation, and payments from one corporation to another do not require the issuance of Forms 1099, the production companies did not issue Forms 1099 to SitNat.  Not all of these payments from production companies to SitNat were reported as income.

12.  It was further part of the conspiracy that in or about 2011, defendants MARC SORRENTINO and MICHAEL SORRENTINO utilized the Accounting Firm to assist them in preparing their personal and business tax returns for tax year 2010, and subsequently utilized the Accounting Firm to assist them in preparing their personal and business tax returns for tax years 2011 and 2012.

7

13.    It was further part of the conspiracy that defendants MARC SORRENTINO and MICHAEL SORRENTINO provided information and records to the Accounting Firm in connection with the Accounting Firm's preparation of the aforementioned tax returns.  However, in order to reduce their reported income and, therefore, the amount of tax that they would have to pay to the IRS, defendants MARC SORRENTINO and MICHAEL SORRENTINO: (a) intentionally failed to inform the Accounting Firm about the true income amount received from the operation of MPS and SitNat and (b) provided the Accounting Firm with a list of false and/or inflated business expenses that defendants MARC SORRENTINO and MICHAEL SORRENTINO claimed to have incurred from the operation of MPS and SitNat.  These false and/or inflated business expenses included, among other things, payments for several high-end vehicles, purchases of high-end clothing, and personal grooming expenses that were disguised as legitimate business expenses.

14.    It was further part of the conspiracy that defendant MICHAEL SORRENTINO did not file a federal income tax return Form 1040 for calendar year 2011.

15.    It was further part of the conspiracy that on or about November 13, 2013, in response to federal Grand Jury subpoenas dated October 9, 2013, MPS and SitNat produced QuickBooks software containing books and records for tax year 2012.  However, after the Grand Jury subpoenas were served upon MPS and SitNat, but prior to

8

MPS and SitNat producing the books and records, numerous journal entries in the QuickBooks books and records were altered. Specifically, on or about November 6, 2013, journal entries that had originally been entered as taxable payments to defendant MARC SORRENTINO were altered and reclassified as non-taxable payments to defendant MARC SORRENTINO.

<u>Overt Acts</u>

16.    In furtherance of the conspiracy and in order to effect its object, defendants MARC SORRENTINO and MICHAEL SORRENTINO did commit the following overt acts, among others, in the District of New Jersey and elsewhere:

a. <u>Tax Year 2010 – Business Tax Returns</u>

i. In or about 2011, defendants MARC SORRENTINO and MICHAEL SORRENTINO knowingly provided false information to the Accounting Firm knowing it would be used by the Accounting Firm to prepare a U.S. Partnership Return, Form 1065 to be filed with the IRS on behalf of MPS for tax year 2010.  Defendants MARC SORRENTINO and MICHAEL SORRENTINO knew that this false information substantially understated the gross receipts and substantially overstated the true business expenses of MPS.  The Accounting Firm then prepared a tax return for MPS which understated the gross receipts and which also claimed approximately $1,178,128 in business expenses.  The false and/or inflated business expenses included, among other items,

9

expenses for luxury cars, clothing, and distributions to defendants MARC SORRENTINO and MICHAEL SORRENTINO.

ii. In or about June 2011, defendant MICHAEL SORRENTINO submitted and caused to be submitted to the IRS a false and fraudulent U.S. Partnership Tax Return, Form 1065 for MPS for tax year 2010, knowing that it was materially false.

b. Tax Year 2010 - Personal Tax Returns

i. In or about 2011, defendants MARC SORRENTINO and MICHAEL SORRENTINO intentionally provided false information to the Accounting Firm knowing it would be used by the Accounting Firm to prepare personal tax returns for defendants MARC SORRENTINO and MICHAEL SORRENTINO.

ii. In or about June 2011, defendant MARC SORRENTINO submitted and caused to be submitted to the IRS a false and fraudulent U.S. Individual Income Tax Return, Form 1040 for tax year 2010, knowing that it falsely reported the income he received from MPS on Schedule K-1. The tax return was verified by a written declaration that it was made under the penalties of perjury.

iii. In or about June 2011, defendant MICHAEL SORRENTINO submitted and caused to be submitted to the IRS a false and fraudulent U.S. Individual Income Tax Return, Form 1040 for tax year 2010, knowing that it falsely reported the income he received from MPS on Schedule K-1. The tax return was verified by a written declaration that it was made under the penalties of perjury.

10

c. Tax Year 2011 - Business Tax Returns

i. In or about 2012, defendants MARC SORRENTINO and MICHAEL SORRENTINO intentionally provided false information to the Accounting Firm knowing it would be used by the Accounting Firm to prepare U.S. Tax Returns, Forms 1065 and 1120S to be filed with the Internal Revenue Service on behalf of MPS and SitNat for tax year 2011. Defendants MARC SORRENTINO and MICHAEL SORRENTINO knew that this false information substantially understated the gross receipts and substantially overstated the true business expenses of MPS and SitNat. The Accounting Firm then prepared tax returns for MPS and SitNat which understated the gross receipts and which also claimed approximately $3,925,975 in business expenses. The false and/or inflated business expenses included, among other items, expenses for luxury cars, clothing, and distributions to defendants MARC SORRENTINO and MICHAEL SORRENTINO.

ii. In or about August 2012, defendant MARC SORRENTINO submitted and caused to be submitted to the IRS a false and fraudulent U.S. Partnership Tax Return, Form 1065 for MPS for tax year 2011, knowing that it was materially false.

iii. In or about February 2012, defendant MICHAEL SORRENTINO submitted and caused to be submitted to the IRS a false and fraudulent U.S. Tax Return, Form 1120S for SitNat for tax year 2011, knowing that it was materially false.

11

d. Tax Year 2011 - Personal Tax Returns

i. In or about 2012, defendants MARC SORRENTINO and MICHAEL SORRENTINO intentionally provided false information to the Accounting Firm knowing it would be used by the Accounting Firm to prepare personal tax returns for defendants MARC SORRENTINO and MICHAEL SORRENTINO.

ii. In or about August 2012, defendant MARC SORRENTINO submitted and caused to be submitted to the IRS a false and fraudulent U.S. Individual Income Tax Return, Form 1040 for tax year 2011 knowing that it falsely reported the income he received from MPS and SitNat on Schedule K-1.  The tax return was verified by a written declaration that it was made under the penalties of perjury.

e. Tax Year 2012 - Business Tax Returns

i. In or about 2013, defendants MARC SORRENTINO and MICHAEL SORRENTINO intentionally provided false information to the Accounting Firm knowing it would be used by the Accounting Firm to prepare U.S. Tax Returns, Forms 1065 and 1120S to be filed with the Internal Revenue Service on behalf of MPS and SitNat for tax year 2012.  Defendants MARC SORRENTINO and MICHAEL SORRENTINO knew that this false information substantially understated the gross receipts of MPS and SitNat.  The Accounting Firm then prepared tax returns for MPS and SitNat which understated the gross receipts.

ii. In or about September 2013, defendants MARC SORRENTINO and MICHAEL SORRENTINO submitted and caused to be submitted to the

12

IRS false and fraudulent U.S. Tax Returns, Forms 1065 and 1120S for MPS and SitNat for tax year 2012, knowing that they were materially false.

f. Tax Year 2012 - Personal Tax Returns

i. In or about 2013, defendants MARC SORRENTINO and MICHAEL SORRENTINO intentionally provided false information to the Accounting Firm knowing it would be used by the Accounting Firm to prepare personal tax returns for defendants MARC SORRENTINO and MICHAEL SORRENTINO.

ii. In or about April 2013, defendant MARC SORRENTINO submitted and caused to be submitted to the IRS a false and fraudulent U.S. Individual Income Tax Return, Form 1040 for tax year 2012 knowing that it falsely reported the income he received from MPS and SitNat on Schedule K-1.  The tax return was verified by a written declaration that it was made under the penalties of perjury.

iii. In or about September 2013, defendant MICHAEL SORRENTINO submitted and caused to be submitted to the IRS a false and fraudulent U.S. Individual Income Tax Return, Form 1040 for tax year 2012 knowing that it falsely reported the income he received from MPS and SitNat on Schedule K-1.  The tax return was verified by a written declaration that it was made under the penalties of perjury.

All in violation of Title 18, United States Code, Section 371.

13

COUNTS 2-6
(Filing False Tax Returns)

1.   Paragraphs 1 and 4 through 16 of Count 1 of this Indictment are hereby realleged and incorporated as if set forth in full herein.

2.   On or about the dates set forth below, in the District of New Jersey and elsewhere, the defendants set forth below did willfully make and subscribe IRS U.S. Individual Income Tax Returns, Forms 1040, as described in paragraph 16 of Count 1 this Indictment, which were verified by written declarations that they were made under the penalties of perjury, and which they did not believe to be true and correct as to every material matter, as described in paragraph 6 of Count 1 of this Indictment, as follows:

| COUNT | DEFENDANT | TAX YEAR | APPROXIMATE DATE RETURN FILED |
|-------|-----------|----------|-------------------------------|
| 2 | MARC SORRENTINO | 2010 | July 5, 2011 |
| 3 | MICHAEL SORRENTINO | 2010 | July 5, 2011 |
| 4 | MARC SORRENTINO | 2011 | August 23, 2012 |
| 5 | MARC SORRENTINO | 2012 | April 15, 2013 |
| 6 | MICHAEL SORRENTINO | 2012 | September 13, 2013 |

In violation of Title 26, United States Code, Section 7206(1).

14

COUNT 7
(Failure to Make Tax Return)

1.    Paragraphs 1 and 4 through 16 of Count 1 of this Indictment are hereby realleged and incorporated as if set forth in full herein.

2.    During the calendar year 2011, MICHAEL SORRENTINO had and received gross income of approximately $1,995,757, which was derived from the operation of his business entities.

3.    Having received this income, MICHAEL SORRENTINO was required by law, following the close of calendar year 2011, and on or before April 16, 2012, to make an income tax return to the IRS stating specifically the items of his gross income and any deductions and credits to which he was entitled.

4.    On or about April 16, 2012, in the District of New Jersey and elsewhere, defendant

MICHAEL SORRENTINO,
a/k/a "The Situation,"

knowing and believing the foregoing facts, did willfully fail to make an income tax return to the IRS.

In violation of Title 26, United States Code, Section 7203.

A TRUE BILL

FOREPERSON

PAUL J. FISHMAN
United States Attorney

15

CASE NUMBER: _14-cr- 558-SDW_

United States District Court
District of New Jersey

**UNITED STATES OF AMERICA**

v.

**MARC SORRENTINO and
MICHAEL SORRENTINO,
a/k/a "The Situation"**

**INDICTMENT FOR**
18 U.S.C. § 371
26 U.S.C. §§ 7206(1) & 7203

A True Bill,

_____
Foreperson

PAUL J. FISHMAN
*U.S. ATTORNEY*
*NEWARK, NEW JERSEY*

EVAN WEITZ
*ASSISTANT U.S. ATTORNEY*
*973-645-2740*

USA-48AD 8
(Ed. 1/97)